**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN CRAGHEAD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.:** |
| | § | |
| **EXACTECH, INC., and EXACTECH U.S.,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## INDEX OF DOCUMENTS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| **A.** | Plaintiff's Original Petition |
| **B.** | Plaintiff's Notice of Non-Suit of Exactech Instrument Services, LLC |
| **C.** | Docket Sheet and Copies of All Pleadings, Orders, and Process Forms |
| **D.** | List of Counsel of Record |

DMS 303825682.1 502786.000103

Respectfully Submitted,

*/s/ Travis S. Gamble*
TRAVIS S. GAMBLE
ATTORNEY-IN-CHARGE
State Bar No. 798195
travis.gamble@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2323 Ross Ave., Suite 1700
Dallas, Texas 75201
(469) 357-2534 (Telephone)
(469) 327-0860 (Fax)

**ATTORNEYS FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on May 2, 2024.

*/s/ Travis S. Gamble*
TRAVIS S. GAMBLE

# Exhibit A

3/28/2024 5:35 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-002003
Stefany Vega juarez

D-1-GN-24-002003

**CAUSE NO. _____**

| | | |
|---|---|---|
| **JOHN CRAGHEAD** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EXACTECH, INC.,** | § | |
| **EXACTECH U.S., INC., and** | § | |
| **EXACTECH INSTRUMENT** | § | 345TH, DISTRICT COURT |
| **SERVICES, LLC** | § | |
| *Defendants.* | § | **\_\_\_\_\_ JUDICIAL DISTRICT** |

## <u>PLAINTIFF'S ORIGINAL PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, John Craghead ("Plaintiff"), complaining of Defendants Exactech, Inc., and Exactech US, Inc., and Exactech Instrument Services, LLC., (Collectively as "Defendants"), and for cause of action respectfully shows the Court and jury the following:

### I.
### <u>DISCOVERY CONTROL PLAN</u>

Pursuant to Tex. R. Civ. P. 190.3, Plaintiff intends for discovery to be conducted under Level Two (2).

### II.
### <u>PARTIES</u>

Plaintiff John Craghead (TxDL: xxxxx676; SSN: xxx-xx-x217) is an individual and resident of the State of Utah.

Defendant, Exactech, Inc., ("Defendant Exactech") is a for-profit Florida Corporation with its principal place of business at 2320 NW 66th Court, Gainesville, FL 32653, and may be served with process through its registered agent National Registered

Agents, Inc., at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201, or wherever they may be found.

Defendant, Exactech U.S., Inc., ("Defendant Exactech U.S.") is a for-profit Florida Corporation with its principal place of business at 2320 NW 66th Court, Gainesville, Florida 32653, and may be served with process through its registered agent National Registered Agents, Inc., at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201, or wherever they may be found.

Defendant, Exactech Instrument Services, LLC., ("Defendant Exactech Instrument") is a limited liability company formed and conducting business in the State of Texas with its principal place of business at 1022 Sharie Street, Deer Park, Texas 77536, and may be served with process through its registered agent David E. Hinton, at 1022 Sharie Street, Deer Park, Texas 77536, or wherever they may be found.

## III.
## JURISDICTION AND VENUE

Venue is proper in Travis County, Texas, pursuant to § 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, Jurisdiction is proper because the amount in controversy is within the jurisdictional limits of this Court. At this time, Plaintiff seeks monetary relief over $1,000,000.

## IV.
## Request Pursuant to Rule 28 for Substitution of True Name

To the extent that Defendants Exactech, Exactech U.S., or Exactech Instrument are conducting business pursuant to a trade name or assumed name, then suit is brought against

2

them pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiff hereby demands upon answering this suit that Defendants Exactech, Exactech U.S., or Exactech Instruments answer in their correct legal name.

**V.**
**<u>INTRODUCTION</u>**

At all times material Plaintiff was a resident of the State of Texas residing in Travis County, Texas. On October 12, 2016 Plaintiff underwent a left total knee arthroplasty in which a Optetrak Logic Tibial Insert Posterior Stabilized ("Defective Device"), which forms part of the Exactech Trulliant Knee System, was utilized to treat left advanced knee osteoarthrosis at Cedar Park Regional Medical Center in Cedar Park, Travis County, Texas. Defendants, directly or through their agents, servants, and/or employees designed, developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, warranted and/or sold the Defective Device for use in total knee replacements.

On April 8, 2022, Plaintiff received a letter alerting him of the defects of the Defective Devise. On April 25, 2022, Plaintiff underwent an evaluation, and it was concluded that Plaintiff was suffering from significant synovitis from poly wear. On June 27, 2022, and as a direct and proximate result of the Defendants' actions and inactions, Plaintiff underwent a left complex total knee arthroplasty revision to remove the failed Defective Device, repair the bone loss, and to replace the Defective Device with a new one at Dell Seton Medical Center at The University of Texas. The Defective Device was, unreasonably dangerous, and caused permanent injury and damages to Plaintiff.

3

The Defective Device failed and was defective because the packaging failed to protect the implant from prolonged exposure to oxygen causing the implant to degrade and lead to early implant failure, substantial and defective polyethylene wear including particulate debris of the plastic polyethylene insert found throughout the knee area, polyethylene wear resulting in loosening of the device around the worn polyethylene insert area, and other failures of the device.

As a result of Defendants' failure to properly package the Optetrak Device prior to distribution, the polyethylene linear prematurely degraded and Plaintiff required revision surgery due to severe pain, swelling, instability in the knee and leg. These injuries were caused by early and preventable wear of the polyethylene insert and/or other failures causing serious complications including synovitis, permanent bone loss, leg length discrepancy and other injuries.

Plaintiff was required to undergo revision surgery well before the estimated life expectancy of the knee implant, well before the estimated life expectancy of a knee implant expected for devices of this kind and has suffered pain and disability leading up to and subsequent to the revision surgery, and will continue to suffer from disability for the rest of his life.

## VI.
## STRICT LIABILITY: MANUFACTORING DEFECT (ALL DEFENDANTS)

Prior to Plaintiff's initial knee surgery, and all times relevant, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device for

4

implantation into consumers, such as Plaintiff, by orthopedic surgeons in the State of Texas, and the United States.

The Defendants had a duty to manufacture the Optetrak Device in a manner that prevents unreasonable risk of harm or injury to users and patients, including Plaintiff.

The Defendants had a duty to distribute, market, and/or sell the Optetrak Device without manufacturing and related packaging defects to prevent an unreasonable risk of harm or injury to users and patients, including Plaintiff.

The Optetrak Device manufactured by the Defendants were not reasonably safe for their expected, intended, and/or foreseeable uses, functions and purposes. The Optetrak Device was not reasonably safe as manufactured, packaged, distributed, marketed and/or sold by the Defendants.

The defects in manufacture of the Optetrak Device were a substantial factor in causing Plaintiff's injuries.

At all times herein mentioned, the Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device, which was implanted in Plaintiff, such that it was dangerous, unsafe, and defective in manufacture. The defects include, but are not limited to:

a. The polyethylene substance within the defective Optetrak Device was of an inferior grade or quality than that advertised or promoted by the Defendants;

b. Failure to package the polyethylene components of the Optetrak Device in bags that contained multiple oxygen barrier layers as to prevent the components from undergoing increased oxidation and causing patients to

5

experience substantial early polyethylene wear, and/or other failures causing serious complications including bone damage, and other injuries as well as the need for revision surgery;

c.  the materials used to package the Optetrak Device were of an inferior grade or quality;

d.  that the Optetrak Device as manufactured differed from Defendants' intended specifications;

e.  that Defendants failed to measure and/or test an adequate number of samples of Optetrak Devices on an ongoing basis;

f.  that Defendants failed to perform adequate quality control or other such testing on the polyethylene inserts used in the Optetrak Device to ensure they complied with required specifications and were not prematurely degrading while stored;

g.  failing to select appropriate third-parties to package the polyethylene inserts used in the Opetrak Device;

h.  failing to properly supervise and monitor the packaging of the polyethylene inserts used in the Opetrak Device;

i.  Failure to exercise sufficient quality control to ensure the polyethylene inserts in the Optetrak Devices were safe for implantation in users and patients and would not degrade abnormally under average and regular use; and

j.  and other acts so deemed negligent.

Defendants knew or reasonably should have known and been aware that the defective Optetrak Devices were defectively manufactured and/or packaged. The manufacturing defects in the Opetrak Device existed when the device left the Defendants' control.

Plaintiff's physicians implanted the Optetrak Device in the manner in which it was intended and recommended to be used making such use reasonably foreseeable to Defendants.

6

The Optetrak Device as tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distrubted and/or sold by Defendants reached Plaintiff without substantial change in its condition.

Defendants knew or had reason to know that the Opetrak Device caused an increased risk of harm to the Plaintiff and other consumers due to the device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications including bone damage, synovitis, and other injuries as well as the need for revision surgery.

The manufacturing defects of the Optetrak Device presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when used and operated for the purposes intended by the Defendants.

The manufacturing defects of the Opetrak Device presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when they were used and operated in a manner that was foreseeable to Defendants.

Plaintiff could not, by the exercise of reasonable care, have discovered the manufacturing defect and perceived its dangers or avoided injury. Defendants are strictly liable for the defective manufacture of the Optetrak Device, the distribution, marketing, and/or sale of the defectively manufactured Optetrak Device; and the injuries sustained by Plaintiff.

## VII.
## <u>STRICT LIABILITY: DESIGN DEFECT (ALL DEFENDANTS)</u>

Prior to Plaintiff's initial knee surgery, and at all times relevant, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Devices for implantation into consumers, such as Plaintiff, by physicians and orthopedic surgeons in the State of Texas, and the United States.

Defendant had a duty to design the defective Optetrak device in a manner that did not present an unreasonable risk of harm or injury to users and patients exposed to their danger, including Plaintiff.

The design of the Optetrak Device and corresponding packaging is defective and not reasonably safe for its expected, intended, and/or foreseeable uses, functions, and purposes.

The Optetrak Device and corresponding packaging are not reasonably safe as designed, distributed, marketed, delivered, and/or sold by Defendants.

The design of the Optetrak Device and packaging received by Plaintiff's implanting surgeon were a substantial factor in causing Plaintiff's injuries.

At all times mentioned herein, the Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device, which was implanted in Plaintiff, such that it was dangerous, unsafe, and defective. The defects in design include but are not limited to:

    a. the Optetrak Device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications

8

including bone damage, synovitis, and other injuries as well as the need for revision surgery;

b. failure to design the packing for the polyethylene components of the Optetrak Device in bags that contained a secondary barrier layer to prevent the component from undergoing increased oxidation and causing patients, including Plaintiff, to experience substantial polyethylene wear, and/or other failures causing serious complications including bone damage, synovitis, and other injuries as well as the need for revision surgery;

c. the materials used within the Optetrak Device were of inferior grade or quality than advertised and promoted by Defendants;

d. Defendants failure to conduct adequate testing, including wear or other testing, on components, subassemblies and/or the finished Optetrak Device and package before distribution for implantation into patients, including Plaintiff;

e. Defendants failure to test an adequate number of samples of Optetrak Devices on an ongoing basis;

f. Defendants failure to take adequate steps to specifically identify failure modes with the Optetrak Device with clarity and to suggest methods to monitor, avoid, and/or prevent further failures;

g. Defendants failure to adequately design packaging specifications for the components, subassemblies, and/or the finished Optetrak Device;

h. the polyethylene material used in the Opetrak Device in conjunction with the inferior packaging bag caused and/or contributed to the Defective Device having a shorter effective lifetime than other similar devices available at the time the Opetrak Devices were put on the market;

i. the Defendants' method of designing the polyethylene insert and packaging, increased the risk of users and patients suffering from pain, discomfort, injury and the need for revision surgery;

j. and other acts so deemed negligent.

Defendants knew or reasonably should have known and been aware that the

Optetrak Device and packaging were defectively designed. The design defects in the

Optetrak Device and packaging existed when the device left the Defendants' control.

9

Plaintiff's physician implanted the Optetrak Device in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Defendants.

The Optetra Device as tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold by Defendants reached Plaintiff without substantial change in its condition.

Defendants knew or had reason to know that the Optetrak Device caused an increased risk of harm to the Plaintiff and other consumers due to the device's propensity to undergo substantial early polyethylene wear, component loosing, and/or other failures causing serious complications including bone damage, synovitis, and other injuries as well as the need for revision surgery in patients, including Plaintiff.

The Optetrak Device and packaging as designed carried risks that were outweighed by any utility of the design of the device and packaging because when paired together the implant, the Optetrak Device was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. At no time did Plaintiff have reason to believe that the Optetrak Device and the pain which it was received were in a condition not suitable for proper and intended use.

The Optetrak Device and packaging were defective in design and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiff, because

10

the foreseeable risks exceeded or outweighed the purported benefits associated with the device.

Feasible safer alternative designs providing the same functional purpose were available to the Defendants at the time the Optetrak Device was designed and packaged, and offered for sale in the market. For example, Defendants could have utilized bags that contained a secondary barrier layer to prevent the polyethylene components from undergoing increased oxidation.

The design defects of the Optetrak Device and corresponding packaging presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when used and operated for the purposes intended by Defendants.

The design defects of the Opetrak Device and corresponding packaging presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when they were used and operated in a manner that was foreseeable to Defendants. Plaintiff could not, by the exercise of reasonable care, have discovered these design defects and perceived its dangers or avoided injury.

Defendants are strictly liable for the defective design of the Optetrak Device; defective design of the packaging of the Defective Design; the distribution, marketing, and/or sale of the Optetrak Device; and injuries sustained by Plaintiff.

## VIII.
## <u>STRICT LIABILITY: FAILURE TO WARN (ALL DEFENDANTS)</u>

Plaintiff realleges and incorporates herein the allegations stated above. Prior to Plaintiff's initial knee surgery, and at all times relevant to this action, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device for implantation into consumers such as Plaintiff, by physicians and orthopedic surgeries in the State of Texas and the United States.

Defendants had a duty to provide adequate warnings regarding the Optetrak Device in a manner that did not present an unreasonable risk of harm or injury to users and patients exposed to their danger, including Plaintiff.

Defendants had a duty to distribute, market, and/or sell the Optetrak Device with adequate warnings that did not present an unreasonable risk of harm or injury to uses and patients exposed to their dangers, including Plaintiff.

The warnings that accompanied the Optetrak Device and corresponding packaging were defective thereby making the product not reasonably safe for its expected, intended, and/or foreseeable uses, functions, and purposes.

The Optetrak Device and corresponding packaging were not reasonably safe as labeled, distributed, marketed, delivered and/or sold by Defendants. The Inadequate labeling accompanying the Opetrak Device and packaging received by Plaintiff's implanting surgeon was a substantial factor in causing Plaintiff's injuries.

12

At all times relevant to this action, the Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device, which was implanted in Plaintiff, such that it was dangerous, unsafe, and defective.

The Optetrak Device was defective and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiff, because the warnings in the instructions for use, operative techniques, directions, marketing, and promotional materials, advertisements, and other communications provided by Defendants or its sales force to physicians and patients, including Plaintiff, with or about the Optetrak Device failed to adequately convey the potential risks and side effects of the Optetrak Device and the dangerous propensities of the device, which risk s were known or were reasonably scientifically knowable to Defendants.

In particular, Defendants failed to adequately disclose the device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications including bone loss, synovitis, and other injuries as well as the need for revision surgery.

Defendants consciously disregarded the increased risks of harm by failing to adequately warn of such risks; unlawfully concealing the dangerous problems associated with implantation of the Opetrak Device; and continuing to market, promote, sell and defend the Optetrak Dvevice; and continuing to marker, promote, sell and defend the Optetrak Device until the very recent recall.

13

Defendants knew or reasonably should have known and been aware that the Optetrak Devices and packaging contained inadequate warnings. The inadequate warnings for the Optetrak Devices existed when the device left the Defendants' control. Plaintiff's physician implanted the Optetrak Device in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Defendants.

The Optetrak Device as tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold by Defendants reached Plaintiff without substantial change to its condition.

As alleged herein, Defendants knew or had a reson to know that the Optetrak Device caused an increased risk of harm to the Plaintiff and other consumers due to the device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications including bone less, synovitis, and other injuries as well as the need for revision surgery.

The Optetrak Device that was labeled, manufactured, distributed, and sold by the Defendants to Plaintiff was in a defective condition that was unreasonably dangerous to any user or ordinary consumer of the device, including Plaintiff. The labeling defects of the Optetrak Device and corresponding packaging presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when used and operated for the purposes intended by Defendants.

The labeling defects of the Optetrak Device and corresponding packing presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when they were used and operated in a manner that was foreseeable to

14

Defendants. Plaintiff could not, by the exercise of reasonable care, have discovered these defects and perceived its dangers or avoided injury. Defendants failed to issue new warnings or initiate a recall in a timely manner as to avoid help minimize the damage and bone loss occurring in patients, including Plaintiff.

The Defendants are strictly liable for providing inadequate warnings accompanying the Optetrak Device and packaging of the Device; the distribution, marketing, and/or sale of the Optetrak Device; and the injuries sustained by Plaintiff. Defendants acted intentionally, recklessly, and wantonly without regard for Plaintiff's rights, entitling Plaintiff to recover punitive damages.

## IX.
## NEGLIGENCE (ALL DEFENDANTS)

Plaintiff's reallege and incorporate by reference the allegations made above. Prior to Plaintiff's initial knee surgery, and at all times relevant to this action, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device for implantation into consumers such as Plaintiff, by physicians and orthopedic surgeries in the State of Texas and the United States.

Prior to, on, and after the dates of Plaintiff's initial knee surgery, and at all times relevant to this action, Defendants had a duty to exercise reasonable care in testing, study, research, design, formulation, manufacture, inspection, labeling, packaging, promotion, advertisement, marketing, distribution and sale of the Optetrak Device for implantation

15

into consumers, such as Plaintiff, by physicians and surgeons in the State of Texas and the United States.

Prior to, on, and after the dates of Plaintiff's initial knee surgery. Defendants breached this duty and failed to exercise reasonable care and were grossly negligent and carless in the testing, study, researched, design, formulation, manufacture, inspection, labeling, packaging, promotion, advertisement, marketing, distribution and sale of the Optetrak Device.

Following Plaintiff's initial knee surgery, Defendants breached this duty and failed to exercise reasonable care and were grossly negligent and careless in failing to recall the Optetrak Device. At all times material hereto, Defendants had actual knowledge, or in the alternative, should have known through the exercise of reasonable and prudent care, of the hazards and dangers associated with the Optetrak Device.

Despite the fact that Defendants knew or should have known the Optetrak Device posed a serious risk of bidly harm to consumers, Defendants continued to manufacture and market the Optetrak Device for implantation into consumers.

Despite the fact Defendants knew or should have known the Opetrak Device posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market the Optetrak Device for implantation into consumers without revising any warning language or issuing an earlier recall.

Defendants failed to advise surgeons and patients, including Plaintiff, of the need for regular follow-up beyond the ordinary practices after a total knee implant as to promptly

16

detect polyethylene degradation and osteolytic failure and timely revise the device to prevent or at least prevent or at least minimize bone loss, osteolysis and related injuries.

Defendants failed to exercise due care under the circumstances, and their negligence and recklessness includes the following acts and omissions:

a. negligently failing to properly package the polyethylene components of the Optetrak Device;

b. negligently failing to select appropriate third-parties to package the polyethylene inserts used in the Optetrak Device;

c. negligently failing to properly supervise and monitor the packaging of the polyethylene inserts used in the Optetrak Device;

d. negligently failing to properly and thoroughly select the material that would be used in the packaging of the Optetrak Device;

e. negligently failing to properly and thoroughly select the materials that would be used in the Optetrak Device;

f. negligently failing to properly and adequately test the Optetrak Device and their attendant parts before releasing the devise to market;

g. negligently failing to conduct sufficient post-market testing and surveillance of the Optetrak Device;

h. negligently designing, manufacturing, marketing, advertising, distributing, and selling the Optetrak Device;

i. negligently designing, manufacturing, marketing, advertising, distributing, and selling the Optetrak Device to consumers, including Plaintiff, without an adequate warning of the dangerous risks of the Optetrak Device;

j. negligently misrepresenting the safety of the Optetrak Dvice;

k. negligently failing to provide warnings, instructions or other information that accurately reflected the risks of early failure of the Optetrak Device;

l. negligently failing to provide warnings, instructions or other information that accurately reflected the risks of early degradation of the polyethylene substance in the Optetrak Device;

m. negligently failing to exercise due care in the advertisement and promotion of the Optetrak Device;

n. negligently failing to warn consumers, doctors, users, and patients that the Optetrak Device would contain polyethylene materials not properly packaged and/or in accordance with Defendants' specifications;

o. negligently failing to recall the Optetrak Device at an earlier date and institute a process to have patients notified; and

p. other acts so deemed negligent.

Defendants knew and/or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacture, design, testing, assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warning of the risks and dangers of the Defective Device, and otherwise distributing the Optetrak Device.

Each and all of the above foregoing acts, both of omission and commission, were negligent and constituted negligence, and were each and all, independently and/or concurrently the sole proximate cause of the damages made the basis of this suit.

## X.
## DAMAGES

As a result of the crash, Plaintiff sustained personal injuries, causing physical pain, physical impairment and mental anguish in the past and future, and permanent disability. Plaintiff has also incurred medical expenses in the past and may continue to incur medical expenses in the future.

## XI.
## NOTICE OF INITIAL DISCLOSURES

Plaintiff hereby states that pursuant to the TEXAS RULES OF CIVIL PROCEDURE,

18

Defendants must disclose and produce the information and documents listed in Rule 194.2(b)(1)-(12) to the office of the undersigned counsel for Plaintiff no later than thirty (30) days after the first answer or general appearance is filed.

## XII.
## COURT COSTS, PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Plaintiff further alleges that she is entitled to recover court costs, pre-judgment and post-judgment interest at the legal rate as provided by law.

## XII.
## DESIGNATED EMAIL FOR SERVICE

Plaintiff hereby notifies all parties that the designated email for service for all matters including but not limited to discovery, motions, notices, and pleadings, is e-service@thejdfirm.com.

## XIV.

## Notice of Self-Authentication

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Defendants are hereby noticed that the production of any documents in response to written discovery authenticates the document for use against that party in pretrial proceeding or at trial.

## V.
## JURY TRIAL

Plaintiff demands a trial by jury and tenders the appropriate fee herein.

19

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be duly cited in terms of law to appear and answer herein and that upon final hearing hereof, Plaintiff recover judgment against Defendants for Plaintiff's damages as herein above set out with pre-judgment and post-judgment interest at the legal rate; costs of Court and for such other and further relief to which Plaintiff may be entitled under equity and in law.

Respectfully submitted,

**DAVIS LAW GROUP**

By:＿＿/s/ *Joshua P. Davis*＿＿＿＿＿
　　　Joshua P. Davis
　　　State Bar No. 24055379
　　　Margaret Allbritton
　　　State Bar No. 24105428
1010 Lamar, Suite 200
Houston, Texas 77002
713.337.4100/Phone
713.337.4101/Fax
*josh@thejdfirm.com*
margaret@thejdfirm.com
*e-service@thejdfirm.com*

**Attorneys for Plaintiff**

20

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jonathan Ocampo on behalf of Joshua Davis
Bar No. 24055379
jonathan@thejdfirm.com
Envelope ID: 86094176
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 4/1/2024 2:28 PM CST

Associated Case Party: JOHNCRAGHEAD

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joshua Davis | | e-service@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |
| Jonathan Ocampo | | jonathan@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |
| Joshua Davis | | josh@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |
| Margaret Allbritton | | margaret@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |

# Exhibit B

## CAUSE NO. D-1-GN-24-002003

| | | |
|---|---|---|
| **JOHN CRAGHEAD** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EXACTECH, INC.,** | § | |
| **EXACTECH U.S., INC., and** | § | |
| **EXACTECH INSTRUMENT** | § | |
| **SERVICES, LLC** | § | |
| *Defendants.* | § | **345ᵗʰ JUDICIAL DISTRICT** |

## PLAINTIFF'S NOTICE OF PARTIAL NON-SUIT AS TO EXACTECH INSTRUMENT SERVICES, LLC ONLY

Plaintiff, John Craghead, pursuant to Rule 162 of the Texas Rules of Civil Procedure, gives notice to the Court and to all parties that he is non-suiting with prejudice his claims against Defendant Exactech Instruments Services, LLC, ONLY, and respectfully shows the Court as follows:

**I.**

Plaintiff hereby non-suits his claims alleged against Exactech Instrument Services, LLC, ONLY, with prejudice to re-filing same. This non-suit is effective immediately upon filing.

Respectfully submitted,

**DAVIS LAW GROUP**

By:  /s/ *Joshua P. Davis*

Joshua P. Davis
State Bar No. 24055379
*josh@thejdfirm.com*
Margaret R. Allbritton

State Bar No. 24105429
*margaret@thejdfirm.com*
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101/Fax
*e-service@thejdfirm.com*

**Attorneys for Plaintiff**

CAUSE NO. D-1-GN-24-002003

| | | |
|---|---|---|
| **JOHN CRAGHEAD** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § | |
| | § | |
| **VS.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EXACTECH, INC.,** | § | |
| **EXACTECH U.S., INC., and** | § | |
| **EXACTECH INSTRUMENT** | § | |
| **SERVICES, LLC** | § | |
| *Defendants*. | § | **345th JUDICIAL DISTRICT** |

## ORDER

The Court, having considered Plaintiff's Partial Notice of Non-Suit with Prejudice of Defendant Exactech Instrument Services, LLC, is of the opinion that said Non-Suit should in all things be GRANTED. It is, therefore,

ORDERED that Plaintiff's Partial Notice of Non-Suit of Defendant Exactech Instrument Services, LLC is hereby GRANTED.

SIGNED this _____ day of _____ 2024.

_____
JUDGE PRESIDING

# EXHIBIT C

**345th District Court**

# Case Summary

### Case No. D-1-GN-24-002003

| | | |
|---|---|---|
| JOHN CRAGHEAD vs. EXACTECH, INC.,EXACTECH U.S., INC. | §<br>§<br>§ | Location: **345th District Court**<br>Judicial Officer: **345TH, DISTRICT COURT**<br>Filed on: **03/28/2024** |

---

## Case Information

Case Type: Product Liability - Other
Case Status: **03/28/2024 Open**

---

## Assignment Information

**Current Case Assignment**
Case Number    D-1-GN-24-002003
Court               345th District Court
Date Assigned    03/28/2024
Judicial Officer  345TH, DISTRICT COURT

---

## Party Information

**Plaintiff**    **CRAGHEAD, JOHN**    **DAVIS, JOSHUA PAUL**
*Retained*

**Defendant**  **EXACTECH U.S., INC.**

**EXACTECH, INC.**

---

## Case Events

03/28/2024    ORIGINAL PETITION/APPLICATION (OCA)
*PLAINTIFF'S ORIGINAL PETITION*
Party:   Plaintiff CRAGHEAD, JOHN

03/28/2024    OTHER/NOTICE
*PROCESS REQUEST FORM*

04/16/2024    FINAL OR PARTIAL DISPOSITION ORDER
*PLAINTIFF S NOTICE OF PARTIAL NON-SUIT AS TO EXACTECH INSTRUMENT SERVICES, LLC ONLY*
Party:   Plaintiff CRAGHEAD, JOHN

---

## Service Events

04/02/2024    **Citation**
EXACTECH, INC.
Unserved
EXACTECH U.S., INC.
Unserved

3/28/2024 5:35 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-002003
Stefany Vega juarez

D-1-GN-24-002003

CAUSE NO. _____

| | | |
|---|---|---|
| **JOHN CRAGHEAD** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EXACTECH, INC.,** | § | |
| **EXACTECH U.S., INC., and** | § | |
| **EXACTECH INSTRUMENT** | § | 345TH, DISTRICT COURT |
| **SERVICES, LLC** | § | |
| *Defendants.* | § | _____ **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, John Craghead ("Plaintiff"), complaining of Defendants Exactech, Inc., and Exactech US, Inc., and Exactech Instrument Services, LLC., (Collectively as "Defendants"), and for cause of action respectfully shows the Court and jury the following:

### I.
### DISCOVERY CONTROL PLAN

Pursuant to Tex. R. Civ. P. 190.3, Plaintiff intends for discovery to be conducted under Level Two (2).

### II.
### PARTIES

Plaintiff John Craghead (TxDL: xxxxx676; SSN: xxx-xx-x217) is an individual and resident of the State of Utah.

Defendant, Exactech, Inc., ("Defendant Exactech") is a for-profit Florida Corporation with its principal place of business at 2320 NW 66th Court, Gainesville, FL 32653, and may be served with process through its registered agent National Registered

Agents, Inc., at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201, or wherever they may be found.

Defendant, Exactech U.S., Inc., ("Defendant Exactech U.S.") is a for-profit Florida Corporation with its principal place of business at 2320 NW 66th Court, Gainesville, Florida 32653, and may be served with process through its registered agent National Registered Agents, Inc., at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201, or wherever they may be found.

Defendant, Exactech Instrument Services, LLC., ("Defendant Exactech Instrument") is a limited liability company formed and conducting business in the State of Texas with its principal place of business at 1022 Sharie Street, Deer Park, Texas 77536, and may be served with process through its registered agent David E. Hinton, at 1022 Sharie Street, Deer Park, Texas 77536, or wherever they may be found.

### III.
### JURISDICTION AND VENUE

Venue is proper in Travis County, Texas, pursuant to § 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, Jurisdiction is proper because the amount in controversy is within the jurisdictional limits of this Court. At this time, Plaintiff seeks monetary relief over $1,000,000.

### IV.
### Request Pursuant to Rule 28 for Substitution of True Name

To the extent that Defendants Exactech, Exactech U.S., or Exactech Instrument are conducting business pursuant to a trade name or assumed name, then suit is brought against

2

them pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiff hereby demands upon answering this suit that Defendants Exactech, Exactech U.S., or Exactech Instruments answer in their correct legal name.

**V.**
**<u>INTRODUCTION</u>**

At all times material Plaintiff was a resident of the State of Texas residing in Travis County, Texas. On October 12, 2016 Plaintiff underwent a left total knee arthroplasty in which a Optetrak Logic Tibial Insert Posterior Stabilized ("Defective Device"), which forms part of the Exactech Trulliant Knee System, was utilized to treat left advanced knee osteoarthrosis at Cedar Park Regional Medical Center in Cedar Park, Travis County, Texas. Defendants, directly or through their agents, servants, and/or employees designed, developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, warranted and/or sold the Defective Device for use in total knee replacements.

On April 8, 2022, Plaintiff received a letter alerting him of the defects of the Defective Devise. On April 25, 2022, Plaintiff underwent an evaluation, and it was concluded that Plaintiff was suffering from significant synovitis from poly wear. On June 27, 2022, and as a direct and proximate result of the Defendants' actions and inactions, Plaintiff underwent a left complex total knee arthroplasty revision to remove the failed Defective Device, repair the bone loss, and to replace the Defective Device with a new one at Dell Seton Medical Center at The University of Texas. The Defective Device was, unreasonably dangerous, and caused permanent injury and damages to Plaintiff.

3

The Defective Device failed and was defective because the packaging failed to protect the implant from prolonged exposure to oxygen causing the implant to degrade and lead to early implant failure, substantial and defective polyethylene wear including particulate debris of the plastic polyethylene insert found throughout the knee area, polyethylene wear resulting in loosening of the device around the worn polyethylene insert area, and other failures of the device.

As a result of Defendants' failure to properly package the Optetrak Device prior to distribution, the polyethylene linear prematurely degraded and Plaintiff required revision surgery due to severe pain, swelling, instability in the knee and leg. These injuries were caused by early and preventable wear of the polyethylene insert and/or other failures causing serious complications including synovitis, permanent bone loss, leg length discrepancy and other injuries.

Plaintiff was required to undergo revision surgery well before the estimated life expectancy of the knee implant, well before the estimated life expectancy of a knee implant expected for devices of this kind and has suffered pain and disability leading up to and subsequent to the revision surgery, and will continue to suffer from disability for the rest of his life.

## VI.
## STRICT LIABILITY: MANUFACTORING DEFECT (ALL DEFENDANTS)

Prior to Plaintiff's initial knee surgery, and all times relevant, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device for

4

implantation into consumers, such as Plaintiff, by orthopedic surgeons in the State of Texas, and the United States.

The Defendants had a duty to manufacture the Optetrak Device in a manner that prevents unreasonable risk of harm or injury to users and patients, including Plaintiff.

The Defendants had a duty to distribute, market, and/or sell the Optetrak Device without manufacturing and related packaging defects to prevent an unreasonable risk of harm or injury to users and patients, including Plaintiff.

The Optetrak Device manufactured by the Defendants were not reasonably safe for their expected, intended, and/or foreseeable uses, functions and purposes. The Optetrak Device was not reasonably safe as manufactured, packaged, distributed, marketed and/or sold by the Defendants.

The defects in manufacture of the Optetrak Device were a substantial factor in causing Plaintiff's injuries.

At all times herein mentioned, the Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device, which was implanted in Plaintiff, such that it was dangerous, unsafe, and defective in manufacture. The defects include, but are not limited to:

a. The polyethylene substance within the defective Optetrak Device was of an inferior grade or quality than that advertised or promoted by the Defendants;

b. Failure to package the polyethylene components of the Optetrak Device in bags that contained multiple oxygen barrier layers as to prevent the components from undergoing increased oxidation and causing patients to

5

experience substantial early polyethylene wear, and/or other failures causing serious complications including bone damage, and other injuries as well as the need for revision surgery;

c. the materials used to package the Optetrak Device were of an inferior grade or quality;

d. that the Optetrak Device as manufactured differed from Defendants' intended specifications;

e. that Defendants failed to measure and/or test an adequate number of samples of Optetrak Devices on an ongoing basis;

f. that Defendants failed to perform adequate quality control or other such testing on the polyethylene inserts used in the Optetrak Device to ensure they complied with required specifications and were not prematurely degrading while stored;

g. failing to select appropriate third-parties to package the polyethylene inserts used in the Opetrak Device;

h. failing to properly supervise and monitor the packaging of the polyethylene inserts used in the Opetrak Device;

i. Failure to exercise sufficient quality control to ensure the polyethylene inserts in the Optetrak Devices were safe for implantation in users and patients and would not degrade abnormally under average and regular use; and

j. and other acts so deemed negligent.

Defendants knew or reasonably should have known and been aware that the defective Optetrak Devices were defectively manufactured and/or packaged. The manufacturing defects in the Opetrak Device existed when the device left the Defendants' control.

Plaintiff's physicians implanted the Optetrak Device in the manner in which it was intended and recommended to be used making such use reasonably foreseeable to Defendants.

6

The Optetrak Device as tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distrubted and/or sold by Defendants reached Plaintiff without substantial change in its condition.

Defendants knew or had reason to know that the Opetrak Device caused an increased risk of harm to the Plaintiff and other consumers due to the device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications including bone damage, synovitis, and other injuries as well as the need for revision surgery.

The manufacturing defects of the Optetrak Device presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when used and operated for the purposes intended by the Defendants.

The manufacturing defects of the Opetrak Device presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when they were used and operated in a manner that was foreseeable to Defendants.

Plaintiff could not, by the exercise of reasonable care, have discovered the manufacturing defect and perceived its dangers or avoided injury. Defendants are strictly liable for the defective manufacture of the Optetrak Device, the distribution, marketing, and/or sale of the defectively manufactured Optetrak Device; and the injuries sustained by Plaintiff.

## VII.
## <u>STRICT LIABILITY: DESIGN DEFECT (ALL DEFENDANTS)</u>

Prior to Plaintiff's initial knee surgery, and at all times relevant, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Devices for implantation into consumers, such as Plaintiff, by physicians and orthopedic surgeons in the State of Texas, and the United States.

Defendant had a duty to design the defective Optetrak device in a manner that did not present an unreasonable risk of harm or injury to users and patients exposed to their danger, including Plaintiff.

The design of the Optetrak Device and corresponding packaging is defective and not reasonably safe for its expected, intended, and/or foreseeable uses, functions, and purposes.

The Optetrak Device and corresponding packaging are not reasonably safe as designed, distributed, marketed, delivered, and/or sold by Defendants.

The design of the Optetrak Device and packaging received by Plaintiff's implanting surgeon were a substantial factor in causing Plaintiff's injuries.

At all times mentioned herein, the Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device, which was implanted in Plaintiff, such that it was dangerous, unsafe, and defective. The defects in design include but are not limited to:

    a. the Optetrak Device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications

8

including bone damage, synovitis, and other injuries as well as the need for revision surgery;

b. failure to design the packing for the polyethylene components of the Optetrak Device in bags that contained a secondary barrier layer to prevent the component from undergoing increased oxidation and causing patients, including Plaintiff, to experience substantial polyethylene wear, and/or other failures causing serious complications including bone damage, synovitis, and other injuries as well as the need for revision surgery;

c. the materials used within the Optetrak Device were of inferior grade or quality than advertised and promoted by Defendants;

d. Defendants failure to conduct adequate testing, including wear or other testing, on components, subassemblies and/or the finished Optetrak Device and package before distribution for implantation into patients, including Plaintiff;

e. Defendants failure to test an adequate number of samples of Optetrak Devices on an ongoing basis;

f. Defendants failure to take adequate steps to specifically identify failure modes with the Optetrak Device with clarity and to suggest methods to monitor, avoid, and/or prevent further failures;

g. Defendants failure to adequately design packaging specifications for the components, subassemblies, and/or the finished Optetrak Device;

h. the polyethylene material used in the Opetrak Device in conjunction with the inferior packaging bag caused and/or contributed to the Defective Device having a shorter effective lifetime than other similar devices available at the time the Opetrak Devices were put on the market;

i. the Defendants' method of designing the polyethylene insert and packaging, increased the risk of users and patients suffering from pain, discomfort, injury and the need for revision surgery;

j. and other acts so deemed negligent.

Defendants knew or reasonably should have known and been aware that the

Optetrak Device and packaging were defectively designed. The design defects in the

Optetrak Device and packaging existed when the device left the Defendants' control.

9

Plaintiff's physician implanted the Optetrak Device in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Defendants.

The Optetra Device as tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold by Defendants reached Plaintiff without substantial change in its condition.

Defendants knew or had reason to know that the Optetrak Device caused an increased risk of harm to the Plaintiff and other consumers due to the device's propensity to undergo substantial early polyethylene wear, component loosing, and/or other failures causing serious complications including bone damage, synovitis, and other injuries as well as the need for revision surgery in patients, including Plaintiff.

The Optetrak Device and packaging as designed carried risks that were outweighed by any utility of the design of the device and packaging because when paired together the implant, the Optetrak Device was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. At no time did Plaintiff have reason to believe that the Optetrak Device and the pain which it was received were in a condition not suitable for proper and intended use.

The Optetrak Device and packaging were defective in design and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiff, because

10

the foreseeable risks exceeded or outweighed the purported benefits associated with the device.

Feasible safer alternative designs providing the same functional purpose were available to the Defendants at the time the Optetrak Device was designed and packaged, and offered for sale in the market. For example, Defendants could have utilized bags that contained a secondary barrier layer to prevent the polyethylene components from undergoing increased oxidation.

The design defects of the Optetrak Device and corresponding packaging presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when used and operated for the purposes intended by Defendants.

The design defects of the Opetrak Device and corresponding packaging presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when they were used and operated in a manner that was foreseeable to Defendants. Plaintiff could not, by the exercise of reasonable care, have discovered these design defects and perceived its dangers or avoided injury.

Defendants are strictly liable for the defective design of the Optetrak Device; defective design of the packaging of the Defective Design; the distribution, marketing, and/or sale of the Optetrak Device; and injuries sustained by Plaintiff.

## VIII.
## STRICT LIABILITY: FAILURE TO WARN (ALL DEFENDANTS)

Plaintiff realleges and incorporates herein the allegations stated above. Prior to Plaintiff's initial knee surgery, and at all times relevant to this action, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device for implantation into consumers such as Plaintiff, by physicians and orthopedic surgeries in the State of Texas and the United States.

Defendants had a duty to provide adequate warnings regarding the Optetrak Device in a manner that did not present an unreasonable risk of harm or injury to users and patients exposed to their danger, including Plaintiff.

Defendants had a duty to distribute, market, and/or sell the Optetrak Device with adequate warnings that did not present an unreasonable risk of harm or injury to uses and patients exposed to their dangers, including Plaintiff.

The warnings that accompanied the Optetrak Device and corresponding packaging were defective thereby making the product not reasonably safe for its expected, intended, and/or foreseeable uses, functions, and purposes.

The Optetrak Device and corresponding packaging were not reasonably safe as labeled, distributed, marketed, delivered and/or sold by Defendants. The Inadequate labeling accompanying the Opetrak Device and packaging received by Plaintiff's implanting surgeon was a substantial factor in causing Plaintiff's injuries.

12

At all times relevant to this action, the Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device, which was implanted in Plaintiff, such that it was dangerous, unsafe, and defective.

The Optetrak Device was defective and unreasonably dangerous when it entered the stream of commerce and was received by Plaintiff, because the warnings in the instructions for use, operative techniques, directions, marketing, and promotional materials, advertisements, and other communications provided by Defendants or its sales force to physicians and patients, including Plaintiff, with or about the Optetrak Device failed to adequately convey the potential risks and side effects of the Optetrak Device and the dangerous propensities of the device, which risk s were known or were reasonably scientifically knowable to Defendants.

In particular, Defendants failed to adequately disclose the device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications including bone loss, synovitis, and other injuries as well as the need for revision surgery.

Defendants consciously disregarded the increased risks of harm by failing to adequately warn of such risks; unlawfully concealing the dangerous problems associated with implantation of the Opetrak Device; and continuing to market, promote, sell and defend the Optetrak Dvevice; and continuing to marker, promote, sell and defend the Optetrak Device until the very recent recall.

13

Defendants knew or reasonably should have known and been aware that the Optetrak Devices and packaging contained inadequate warnings. The inadequate warnings for the Optetrak Devices existed when the device left the Defendants' control. Plaintiff's physician implanted the Optetrak Device in the manner in which it was intended and recommended to be used, making such use reasonably foreseeable to Defendants.

The Optetrak Device as tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold by Defendants reached Plaintiff without substantial change to its condition.

As alleged herein, Defendants knew or had a reson to know that the Optetrak Device caused an increased risk of harm to the Plaintiff and other consumers due to the device's propensity to undergo substantial early polyethylene wear, and/or other failures causing serious complications including bone less, synovitis, and other injuries as well as the need for revision surgery.

The Optetrak Device that was labeled, manufactured, distributed, and sold by the Defendants to Plaintiff was in a defective condition that was unreasonably dangerous to any user or ordinary consumer of the device, including Plaintiff. The labeling defects of the Optetrak Device and corresponding packaging presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when used and operated for the purposes intended by Defendants.

The labeling defects of the Optetrak Device and corresponding packing presented an unreasonable risk of harm to users and patients exposed to their danger, including Plaintiff, when they were used and operated in a manner that was foreseeable to

14

Defendants. Plaintiff could not, by the exercise of reasonable care, have discovered these defects and perceived its dangers or avoided injury. Defendants failed to issue new warnings or initiate a recall in a timely manner as to avoid help minimize the damage and bone loss occurring in patients, including Plaintiff.

The Defendants are strictly liable for providing inadequate warnings accompanying the Optetrak Device and packaging of the Device; the distribution, marketing, and/or sale of the Optetrak Device; and the injuries sustained by Plaintiff. Defendants acted intentionally, recklessly, and wantonly without regard for Plaintiff's rights, entitling Plaintiff to recover punitive damages.

## IX.
## NEGLIGENCE (ALL DEFENDANTS)

Plaintiff's reallege and incorporate by reference the allegations made above. Prior to Plaintiff's initial knee surgery, and at all times relevant to this action, Defendants tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, promoted, advertised, marketed, distributed, and/or sold the Optetrak Device for implantation into consumers such as Plaintiff, by physicians and orthopedic surgeries in the State of Texas and the United States.

Prior to, on, and after the dates of Plaintiff's initial knee surgery, and at all times relevant to this action, Defendants had a duty to exercise reasonable care in testing, study, research, design, formulation, manufacture, inspection, labeling, packaging, promotion, advertisement, marketing, distribution and sale of the Optetrak Device for implantation

15

into consumers, such as Plaintiff, by physicians and surgeons in the State of Texas and the United States.

Prior to, on, and after the dates of Plaintiff's initial knee surgery. Defendants breached this duty and failed to exercise reasonable care and were grossly negligent and carless in the testing, study, researched, design, formulation, manufacture, inspection, labeling, packaging, promotion, advertisement, marketing, distribution and sale of the Optetrak Device.

Following Plaintiff's initial knee surgery, Defendants breached this duty and failed to exercise reasonable care and were grossly negligent and careless in failing to recall the Optetrak Device. At all times material hereto, Defendants had actual knowledge, or in the alternative, should have known through the exercise of reasonable and prudent care, of the hazards and dangers associated with the Optetrak Device.

Despite the fact that Defendants knew or should have known the Optetrak Device posed a serious risk of bidly harm to consumers, Defendants continued to manufacture and market the Optetrak Device for implantation into consumers.

Despite the fact Defendants knew or should have known the Opetrak Device posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market the Optetrak Device for implantation into consumers without revising any warning language or issuing an earlier recall.

Defendants failed to advise surgeons and patients, including Plaintiff, of the need for regular follow-up beyond the ordinary practices after a total knee implant as to promptly

16

detect polyethylene degradation and osteolytic failure and timely revise the device to prevent or at least prevent or at least minimize bone loss, osteolysis and related injuries.

Defendants failed to exercise due care under the circumstances, and their negligence and recklessness includes the following acts and omissions:

a.  negligently failing to properly package the polyethylene components of the Optetrak Device;

b.  negligently failing to select appropriate third-parties to package the polyethylene inserts used in the Optetrak Device;

c.  negligently failing to properly supervise and monitor the packaging of the polyethylene inserts used in the Optetrak Device;

d.  negligently failing to properly and thoroughly select the material that would be used in the packaging of the Optetrak Device;

e.  negligently failing to properly and thoroughly select the materials that would be used in the Optetrak Device;

f.  negligently failing to properly and adequately test the Optetrak Device and their attendant parts before releasing the devise to market;

g.  negligently failing to conduct sufficient post-market testing and surveillance of the Optetrak Device;

h.  negligently designing, manufacturing, marketing, advertising, distributing, and selling the Optetrak Device;

i.  negligently designing, manufacturing, marketing, advertising, distributing, and selling the Optetrak Device to consumers, including Plaintiff, without an adequate warning of the dangerous risks of the Optetrak Device;

j.  negligently misrepresenting the safety of the Optetrak Dvice;

k.  negligently failing to provide warnings, instructions or other information that accurately reflected the risks of early failure of the Optetrak Device;

l.  negligently failing to provide warnings, instructions or other information that accurately reflected the risks of early degradation of the polyethylene substance in the Optetrak Device;

17

m. negligently failing to exercise due care in the advertisement and promotion of the Optetrak Device;

n. negligently failing to warn consumers, doctors, users, and patients that the Optetrak Device would contain polyethylene materials not properly packaged and/or in accordance with Defendants' specifications;

o. negligently failing to recall the Optetrak Device at an earlier date and institute a process to have patients notified; and

p. other acts so deemed negligent.

Defendants knew and/or should have known that it was foreseeable that consumers such as Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacture, design, testing, assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warning of the risks and dangers of the Defective Device, and otherwise distributing the Optetrak Device.

Each and all of the above foregoing acts, both of omission and commission, were negligent and constituted negligence, and were each and all, independently and/or concurrently the sole proximate cause of the damages made the basis of this suit.

## X.
## DAMAGES

As a result of the crash, Plaintiff sustained personal injuries, causing physical pain, physical impairment and mental anguish in the past and future, and permanent disability. Plaintiff has also incurred medical expenses in the past and may continue to incur medical expenses in the future.

## XI.
## NOTICE OF INITIAL DISCLOSURES

Plaintiff hereby states that pursuant to the TEXAS RULES OF CIVIL PROCEDURE,

18

Defendants must disclose and produce the information and documents listed in Rule 194.2(b)(1)-(12) to the office of the undersigned counsel for Plaintiff no later than thirty (30) days after the first answer or general appearance is filed.

## XII.
## COURT COSTS, PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Plaintiff further alleges that she is entitled to recover court costs, pre-judgment and post-judgment interest at the legal rate as provided by law.

## XII.
## DESIGNATED EMAIL FOR SERVICE

Plaintiff hereby notifies all parties that the designated email for service for all matters including but not limited to discovery, motions, notices, and pleadings, is e-service@thejdfirm.com.

## XIV.

## Notice of Self-Authentication

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Defendants are hereby noticed that the production of any documents in response to written discovery authenticates the document for use against that party in pretrial proceeding or at trial.

## V.
## JURY TRIAL

Plaintiff demands a trial by jury and tenders the appropriate fee herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be duly cited in terms of law to appear and answer herein and that upon final hearing hereof, Plaintiff recover judgment against Defendants for Plaintiff's damages as herein above set out with pre-judgment and post-judgment interest at the legal rate; costs of Court and for such other and further relief to which Plaintiff may be entitled under equity and in law.

Respectfully submitted,

**DAVIS LAW GROUP**

By:  /s/ *Joshua P. Davis*
   Joshua P. Davis
   State Bar No. 24055379
   Margaret Allbritton
   State Bar No. 24105428
1010 Lamar, Suite 200
Houston, Texas 77002
713.337.4100/Phone
713.337.4101/Fax
*josh@thejdfirm.com*
margaret@thejdfirm.com
*e-service@thejdfirm.com*

**Attorneys for Plaintiff**

20

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jonathan Ocampo on behalf of Joshua Davis
Bar No. 24055379
jonathan@thejdfirm.com
Envelope ID: 86094176
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 4/1/2024 2:28 PM CST

Associated Case Party: JOHNCRAGHEAD

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joshua Davis | | e-service@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |
| Jonathan Ocampo | | jonathan@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |
| Joshua Davis | | josh@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |
| Margaret Allbritton | | margaret@thejdfirm.com | 3/28/2024 5:35:10 PM | SENT |

## CAUSE NO. D-1-GN-24-002003

| | | |
|---|---|---|
| **JOHN CRAGHEAD** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff*, | § | |
| | § | |
| **VS.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EXACTECH, INC.,** | § | |
| **EXACTECH U.S., INC., and** | § | |
| **EXACTECH INSTRUMENT** | § | |
| **SERVICES, LLC** | § | |
| *Defendants.* | § | **345th JUDICIAL DISTRICT** |

## PLAINTIFF'S NOTICE OF PARTIAL NON-SUIT AS TO EXACTECH INSTRUMENT SERVICES, LLC ONLY

Plaintiff, John Craghead, pursuant to Rule 162 of the Texas Rules of Civil Procedure, gives notice to the Court and to all parties that he is non-suiting with prejudice his claims against Defendant Exactech Instruments Services, LLC, ONLY, and respectfully shows the Court as follows:

**I.**

Plaintiff hereby non-suits his claims alleged against Exactech Instrument Services, LLC, ONLY, with prejudice to re-filing same. This non-suit is effective immediately upon filing.

Respectfully submitted,

**DAVIS LAW GROUP**

By:    /s/ *Joshua P. Davis*
       Joshua P. Davis
       State Bar No. 24055379
       *josh@thejdfirm.com*
       Margaret R. Allbritton

State Bar No. 24105429
*margaret@thejdfirm.com*
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101/Fax
*e-service@thejdfirm.com*

**Attorneys for Plaintiff**

2

CAUSE NO. D-1-GN-24-002003

| | | |
|---|---|---|
| JOHN CRAGHEAD | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| EXACTECH, INC., | § | |
| EXACTECH U.S., INC., and | § | |
| EXACTECH INSTRUMENT | § | |
| SERVICES, LLC | § | |
| *Defendants.* | § | 345th JUDICIAL DISTRICT |

## ORDER

The Court, having considered Plaintiff's Partial Notice of Non-Suit with Prejudice of Defendant Exactech Instrument Services, LLC, is of the opinion that said Non-Suit should in all things be GRANTED. It is, therefore,

ORDERED that Plaintiff's Partial Notice of Non-Suit of Defendant Exactech Instrument Services, LLC is hereby GRANTED.

SIGNED this _____ day of _____ 2024.

_____
JUDGE PRESIDING

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN CRAGHEAD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: _____** |
| | § | |
| | § | |
| **EXACTECH, INC. and EXACTECH U.S., INC.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**LIST OF COUNSEL OF RECORD**

| **Counsel for Plaintiff** | **Counsel for Exactech, Inc. and Exactech U.S., Inc.** |
|---|---|
| Joshua P. Davis | TRAVIS S. GAMBLE |
| State Bar No. 24055379 | ATTORNEY-IN-CHARGE |
| josh@thejdfirm.com | State Bar No. 798195 |
| Margaret Allbritton | Travis.gamble@faegredrinker.com |
| State Bar No. 24105428 | FAEGRE DRINKER BIDDLE & REATH LLP |
| margaret@thejdfirm.com | 2323 Ross Ave., Suite 1700 |
| e-service@thejdfirm.com | Dallas, Texas 75201 |
| Davis Law Group | (469) 357-2534 (Telephone) |
| 1010 Lamar, Suite 200 | (469) 327-0860 (Fax) |
| Houston, Texas 77002 | |
| (713) 337-4100 | |
| (713) 337-4101 (Fax) | |

**LIST OF COUNSEL OF RECORD – Page Solo**
DMS_US.363825188.1 502786.000103